**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1003

DAVIS VISION, INCORPORATED,

Plaintiff - Appellant,

versus

MARYLAND OPTOMETRIC ASSOCIATION, Individually
and On Behalf of Its Members,

Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William D. Quarles, Jr., District Judge.
(CA-05-1019-WDQ)

Argued: May 22, 2006                    Decided: June 29, 2006

Before WIDENER and MICHAEL, Circuit Judges, and Joseph R. GOODWIN,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

Reversed by unpublished per curiam opinion.

**ARGUED:** Donna M. Doblick, REED & SMITH, L.L.P., Pittsburgh,
Pennsylvania, for Appellant.  Edward John Steren, OBER, KALER,
GRIMES & SHRIVER, Washington, D.C., for Appellee. **ON BRIEF:** James
C. Martin, Jeanne B. McHale, REED & SMITH, L.L.P., Pittsburgh,
Pennsylvania, for Appellant.  Harold G. Belkowitz, OBER, KALER,
GRIMES & SHRIVER, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

An optometric trade association brought an antitrust suit against a corporation that provides vision care. Some of the association's members had signed contracts with the corporation, and each of these contracts contained an arbitration clause. The district court dismissed the association's suit for lack of subject matter jurisdiction because it determined that the association lacked standing to sue in federal court. The association thereafter commenced arbitration proceedings, and the corporation filed this action seeking a declaration that the association had no authority to force the corporation to arbitrate. On cross-motions for summary judgment the district court held that its prior decision precluded the corporation from litigating the issue of the association's capacity to arbitrate and that the association in fact had such capacity. The court denied summary judgment to the corporation and granted it to the association. The corporation appeals. We conclude that the requirements of issue preclusion were not satisfied and that the corporation was entitled to summary judgment. We therefore reverse.

I.

CareFirst of Maryland, Inc. and affiliates (collectively CareFirst) make up a health maintenance organization. It offers some health plans providing vision benefits. Under an agreement

3

with CareFirst, plaintiff-appellant Davis Vision, Inc. (Davis) in turn has signed contracts with various parties -- ophthalmologists, optometrists, opticians, and eyeglass retailers -- to provide vision care to CareFirst plan participants. Defendant-appellee Maryland Optometric Association (MOA) is a non-profit corporation with about 350 members. Fifty-four MOA members are providers in the Davis network making them signatories to contracts with Davis. Each contract contains an arbitration clause. The clause provides that "[a]ny controversy or claim arising out of or relating to" the contract "or the breach thereof will be settled by arbitration. . . ." J.A. 72, 85.

In July 2004 MOA sued Davis and CareFirst in the U.S. District Court for the District of Maryland. MOA asserted antitrust claims on behalf of its members under federal and state law, as well as state law tort claims for unfair competition, civil conspiracy, and malicious interference with business. The complaint sought money damages and injunctive relief. CareFirst and Davis moved to dismiss on the ground that, among others, MOA lacked associational standing. On December 21, 2004, the district court dismissed the case for lack of subject matter jurisdiction. The court stated that those MOA members who were Davis providers would have to submit their claims to arbitration and could not be permitted to "circumvent" the arbitration clause "by suing through an association." J.A. 160. On the theory that an association

4

cannot "pick and choose" the members that it seeks to represent, the court further stated that MOA could not proceed as a representative only on behalf of those members who were not Davis providers.

In March 2005 MOA filed a demand for arbitration, presenting essentially the same claims it had pursued in federal court but seeking only injunctive relief. The following month Davis filed this action against MOA in the District of Maryland, seeking a declaratory judgment that Davis was not required to arbitrate MOA's claims. Davis thereafter moved for summary judgment on the ground that MOA had no agreement to arbitrate with Davis. MOA cross-moved for summary judgment.

On December 5, 2005, the district court granted MOA's motion for summary judgment and denied Davis's motion. The court concluded that in its December 2004 order it had "determined that MOA lacked standing to seek injunctive relief [in federal court] . . . but could represent its members in arbitration," J.A. 267, and asserted that such determination was entitled to collateral estoppel effect in this case. As for MOA's right to arbitrate, the court noted that "there are certain limited exceptions (e.g., equitable estoppel, agency, and third party beneficiary rights) that allow non-signatories to a contract to compel arbitration." J.A. 265. The court then ruled in MOA's favor. This appeal followed.

## II.

### A.

Davis first contends that the district court erred in concluding that under the doctrine of issue preclusion or collateral estoppel its December 2004 order precluded Davis from challenging MOA's capacity to arbitrate. The issue preclusion doctrine bars subsequent litigation of legal and factual issues common to an earlier action that were "actually and necessarily determined" in the first litigation. Montana v. United States, 440 U.S. 147, 153 (1979). For this doctrine to apply to a legal or factual issue, the proponent must demonstrate that (1) the issue is identical to the one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) determination of the issue was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue had a full and fair opportunity to litigate the issue in the prior proceeding. Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998). We review de novo whether the first four elements are satisfied, and we review the district court's determination as to the fifth element for abuse of discretion. Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 344 (4th Cir. 1992).

We need not evaluate each of these elements because analysis of the first and third is dispositive, for the issues were not identical and the district court's comments about MOA's capacity to arbitrate were not critical and necessary to the prior judgment. As to issue preclusion's first element, the district court's December 2004 order expressly resolved Davis's claim that the court had no subject matter jurisdiction over MOA's suit because MOA could not satisfy the requirements for associational standing set forth in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1977). See J.A. 153 ("Pending are . . . motions to dismiss for lack of subject matter jurisdiction.") (emphasis added). (Under Hunt "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343. When an association suing on behalf of its members cannot satisfy these requirements, it lacks standing and the federal courts have no subject matter jurisdiction over its claim.) The district court granted Davis's dismissal after concluding that MOA lacked associational standing because some of MOA's members were bound by the arbitration clause while others were not, thereby necessitating individual participation in

7

the suit under Hunt's third element.  The only issue of law presented by the prior proceeding was whether MOA had standing to seek relief for its members in the federal judicial forum.  This current suit by Davis for declaratory relief presents an entirely separate issue of law:  whether MOA has any right to pursue claims on behalf of its members in the arbitral forum.  A party's capacity to arbitrate is analytically distinct from its standing to sue in federal court.

As to issue preclusion's third element, while the existence of an arbitration clause was a fact necessary and critical to the district court's judgment, the district court's further comments about MOA's ability to enforce that clause were not.  In challenging MOA's standing to sue in federal court, Davis did not concede that MOA had any capacity to arbitrate.  Davis, of course, did refer to the arbitration clause.  It argued that because some MOA members were parties to contracts containing that clause while others were not, MOA could not satisfy Hunt's mandate that for an association to have standing "neither the claim asserted nor the relief requested requires the participation of [its] individual members in the lawsuit."  Hunt, 432 U.S. at 343.  The district court apparently agreed.  Merely pointing to the arbitration clause as a fact undermining associational standing was not, however, tantamount to an admission that the clause could be enforced by the association asserting rights under it.  After all,

8

in the previous case Davis moved to dismiss for lack of subject matter jurisdiction, not to compel arbitration.

Thus, MOA could not satisfy all elements of issue preclusion, and Davis was not precluded from challenging MOA's capacity to arbitrate its claims.

B.

Davis next contends that summary judgment should have been granted to it because MOA lacked the capacity to arbitrate its claims against Davis. Usually a dispute may not be submitted to arbitration unless the opponents are signatories to a contract containing an arbitration clause, in which case "our task in assessing the arbitrability of a dispute 'primarily is one of contract interpretation.'" Wachovia Bank, Nat. Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006) (quoting Summer Rain v. Donning Co., 964 F.2d 1455, 1460 (4th Cir. 1992)); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (describing the policy behind Federal Arbitration Act, 9 U. S. C. § 1 et seq., as "at bottom a policy guaranteeing the enforcement of private contractual arrangements"). Under narrow circumstances, however, a party that did not enter into a contract containing an arbitration clause may nevertheless insist that a dispute be arbitrated. We have said that "[w]ell-established common law principles dictate that in an appropriate case a

9

nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416-17 (4th Cir. 2000). Courts have recognized "five theories arising out of common law principles of contract and agency law [that] could provide a basis for binding nonsignatories to arbitration agreements: 1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." Id. at 417 (punctuation omitted).

The district court granted MOA summary judgment without determining whether any of these various theories actually allowed MOA (a nonsignatory plaintiff) to bring Davis (a signatory defendant) into arbitration based on the contracts between Davis and some of MOA's members. MOA unpersuasively suggests on appeal that theories of agency or equitable estoppel apply here. Even if the law permitted MOA to act as an agent for a MOA member who was bound by the arbitration clause, MOA failed to oppose Davis's summary judgment motion by submitting evidence that MOA was such an agent under Maryland law. See Patten v. Board of Liquor License Comm'rs, 107 Md. App. 224, 238, 667 A.2d 940, 947 (Md. Ct. Spec. App. 1995) (absent a written agency agreement, a person is not an agent of a principal unless (1) he is "subject to the principal's right of control," (2) he is under a "duty to act primarily for the benefit of the principal," and (3) he holds "the power to alter the

10

legal relations of the principal."). The only evidence that MOA offered on this score was the declaration of its executive director that the MOA board voted to authorize litigation and that one board member (who had a "practice affiliated with" a retailer afforded special treatment under CareFirst's arrangement with Davis) voted to pursue the litigation. J.A. 118-19. This declaration fell short of establishing that there was even a single MOA member who was a party to a contract with Davis and who made MOA its agent for purposes of pursuing arbitration.

Nor was this an equitable estoppel case. Two sets of circumstances fall within that theory. First, "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." Brantley v. Republic Mortgage Ins. Co., 424 F.3d 392, 396 (4th Cir. 2005) (punctuation omitted). Second, "application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Id. Neither circumstance matches the facts of this case because here it is a nonsignatory raising claims against a signatory, not vice versa.

11

Thus, MOA had no grounds on which to force Davis into arbitration.  Summary judgment should have been granted to Davis and not to MOA.

## III.

For the foregoing reasons we reverse the summary judgment in favor of MOA and remand for the district court to enter summary judgment in favor of Davis.

<u>REVERSED</u>

12